RAPID CITY REGIONAL HOSPITAL, INC., Plaintiff and Appellant,

v.

SOUTH DAKOTA INSURANCE GUARANTY ASSOCIATION, Defendant and Appellee,

and

North Star Hospital Mutual Assurance, Ltd., Defendant.

Nos. 16215, 16242.

Supreme Court of South Dakota.

Argued Jan. 10, 1989.

Decided March 1, 1989.

Thomas E. Simmons of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiff and appellant.

Timothy M. Gebhart of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellee; Lawrence L. Piersol of Davenport, Evans, Hurwitz & Smith, Sioux Falls, on the brief.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

Plaintiff, the Rapid City Regional Hospital, Inc. (Hospital), sought a declaratory judgment in the circuit court for Pennington County to determine whether defendants South Dakota Insurance Guaranty Association (Guaranty) and North Star Hospital Mutual Assurance Company, Ltd.,* were obligated to reimburse Hospital for $150,000 paid in settlement of a medical malpractice claim against Hospital after Hospital's two insurers became insolvent. The circuit court granted summary judgment to Guaranty. Hospital appeals, alleging that Guaranty is obligated to pay the $150,000 in question under the terms of an umbrella liability policy issued by the insolvent Transit Casualty Company (Transit).

Guaranty, by notice of review, contests the circuit court's holding that Guaranty can be liable for claims against two insolvent insurers arising from a single injury.

We affirm the circuit court's award of summary judgment to Guaranty on the basis that the policy issued by Transit does not cover the $150,000 at issue, and Guaranty, under SDCL ch. 58–29A, is not obligated to Hospital for that amount. We do not reach the issue raised by Guaranty's notice of review, as consideration of that issue would not affect the outcome of this case.

---

* North Star is not a party to this appeal, as Hospital's claim against it was dismissed without prejudice by the circuit court by stipulation.

## FACTS

In May 1986, Hospital participated in a $900,000 settlement of a medical malpractice claim, which stemmed from hospitalization, in February 1980, of Jason Enos, a minor. Hospital contributed $450,000 of the agreed amount. The Ideal Mutual Insurance Company of New York (Ideal) provided primary coverage of medical malpractice claims against Hospital, up to a $1,000,000 limit on individual claims. An "umbrella liability" policy, issued by the Transit Casualty Company (Transit), provided coverage for amounts in excess of coverage under the Ideal policy, to a maximum of $10,000,000 for an individual occurrence. Both Ideal and Transit became insolvent prior to settlement of Enos' claim, and Guaranty acknowledged liability, under Ideal's policy, for $300,000 of the settlement amount. Guaranty refused to pay the remaining $150,000 on the grounds that its liability was limited to $300,000 for a single injury, under SDCL ch. 58–29A, and Transit's excess liability policy did not provide for coverage of amounts under $1,000,000 when the underlying insurer, Ideal, became insolvent.

The circuit court decided that Guaranty could be liable for two claims against insolvent insurers under SDCL ch. 58–29A, but awarded summary judgment to Guaranty because the coverage of the Transit policy did not encompass the $150,000 claimed by Hospital.

## DECISION

Guaranty, under SDCL ch. 58–29A, becomes the insurer of entities to whom insurance policies are issued by insurers which become insolvent. SDCL 58–29A–17 provides:

> The association shall be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.

The extent of Guaranty's obligation is limited to a maximum of $300,000 for each "covered claim." SDCL 58–29A–16. "Covered claim" is defined as "an unpaid claim ... which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy ..." issued by an insolvent insurer. SDCL 58–29A–3(4). There is no question that Guaranty is responsible for $300,000 coverage under the Ideal policy. However, the crux of this appeal immediately follows.

Hospital argues that Guaranty is also obligated for the additional $150,000 under the Transit excess policy, as the Declarations page of the policy states that coverage extends to liability in excess of "[t]he amount recoverable under the underlying insurance" to a limit of $10,000,000 per occurrence. We disagree.

■ The Transit policy's Declarations page provides that the limit of Transit's liability is "subject to all the terms of this policy having reference thereto." Item 3, Section IA, of the Declarations, upon which Hospital relies heavily, authorizes coverage up to $10,000,000 for amounts in excess of the "amount recoverable under the underlying insurance *as set out in Schedule A attached* [.]" (Emphasis added.) Schedule A, as attached, specifies that Ideal's coverage limit is "$1,000,000 each occurrence." Endorsement No. 8, a supplement to Transit's policy, provides that Transit's "Company limit" is $10,000,000 for each claim, and the "underlying limit" of the Ideal policy is $1,000,000 for each claim. Endorsement No. 8 further states that coverage is "[t]o indemnify the Insured, in accordance with the applicable provisions of the 'underlying insurance' for the amount of 'loss' which is [in] excess of the applicable limits of the 'underlying insurance' described in the Declarations." As the underlying insurance is the Ideal policy, and both Schedule A, referenced in the Declarations, and Endorsement No. 8 specifically define the limit of the Ideal policy as $1,000,000, the Transit policy clearly provides coverage for amounts between $1,000,000, the limit of the Ideal policy, and $10,000,000. Transit's lower limit is Ideal's upper limit. The Transit policy makes no reference to its coverage "dropping down" to replace underlying coverage in the event of the underlying carrier's (Ideal's) insolvency. The

sole policy provision allowing Transit's coverage to "drop down" below the limits of the Ideal policy is Endorsement No. 8, Section III, which is inapplicable. It applies only when the "aggregate limit" of Ideal's policy is reduced or exhausted by "payment of 'loss' solely as the result of claims made...."

When viewed as a whole, the Transit policy is not amenable to an interpretation favoring Hospital's claim. The $150,000 Hospital paid is within the $1,000,000 individual claim limit of the underlying Ideal policy, and thus outside Transit's coverage. Guaranty is not liable for this $150,000 because Transit, if solvent, would not be liable. *See* SDCL 58–29A–17. To focus on a single reference to the "amount recoverable" under the underlying insurance to the exclusion of the balance of the contract is "'distorted and legally inappropriate.'" *Werner Indus., Inc. v. First State Ins. Co.*, 112 N.J. 30, 37, 548 A.2d 188, 191 (1988) (citation omitted). A review of the entire document and attachments is vital to arrive at a sound judgment in determining the contracting intent of the parties. While any uncertainty or ambiguity in a contract of insurance must be construed most strongly against the insurer and in favor of the insured, *Dairyland Ins. Co. v. Kluckman*, 86 S.D. 694, 703, 201 N.W.2d 209, 213–14 (1972), we find no such ambiguity here. "These rules of liberality and favorable treatment do not give the courts carte blanche to fashion coverage in every case for the putative insured." *Fried v. North River Ins. Co.*, 710 F.2d 1022, 1025 (4th Cir.1983). The repeated references to $1,000,000 as the individual claim limit of the underlying Ideal policy is clearly the lower limit of Transit's, and Guaranty's, liability. *See*, for example, *Wommack v. United States Fire Ins. Co.*, 323 F.Supp. 981, 985–86 (W.D.Ark.1971) (cited approvingly in *Fried*, 710 F.2d at 1026), where "applicable limits" of underlying policies was interpreted to refer to the dollar limits of coverage regardless of whether the underlying insurance policies actually provided coverage. There is no coverage under the Transit policy, as written.

██ Nor are we willing to judicially impose "drop down" liability on excess insurers, in the event of an underlying carrier's insolvency, who do not contract for such liability. Such imposition of a theory of "drop down" liability would "fundamentally alter the risk an excess coverage provider is obligated to provide by agreeing to issue excess liability insurance protection." *Wurth v. Ideal Mut. Ins. Co.*, 34 Ohio App.3d 325, 328, 518 N.E.2d 607, 610 (1987).

In summary, neither Transit nor Guaranty are liable for the extra $150,000 paid by Hospital. Given the above resolution of Hospital's appeal, any decision by this Court on the issue raised by Guaranty's Notice of Review cannot affect the outcome of this case. As the right of appeal is restricted to those parties prejudiced or aggrieved by a judgment, *Carlson v. West River Oil Co.*, 75 S.D. 333, 64 N.W.2d 294 (1954), and Guaranty is neither aggrieved nor prejudiced by the judgment favorable to it, we decline to consider Guaranty's cross-appeal. The circuit court is, therefore, affirmed.

All the Justices concur.